IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-02712-CBS

SHAWN D. WEST,

                    Plaintiff,

v.

CAROLYN W. COLVIN,

                    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

        This action comes before the court pursuant to Titles II and XVI of the Social Security

Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social

Security's final decision denying Shawn D. West's ("Plaintiff") application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   Pursuant to the Order

of Reference dated June 4, 2015, this civil action was referred to the Magistrate Judge for all

purposes pursuant to D.C.Colo.LCivR 72.2 and Title 28 U.S.C. § 636(c). *See* Doc. 25.  The court

has carefully considered the Complaint (filed October 3, 2014) (Doc. 1), Defendant's Answer

(filed December 15, 2014) (Doc. 8), Plaintiff's Opening Brief (filed February 10, 2015) (Doc.

13), Defendant's Response Brief (filed April 8, 2015) (Doc. 17), Plaintiff's Reply (filed May 6,

2015) (Doc. 18), the entire case file, the administrative record, and the applicable law.  For the

following reasons, the court REMANDS the Commissioner's decision for further proceedings.

1

## BACKGROUND

In June 2008, Plaintiff filed an application for disability benefits. (*See* Social Security Administrative Record (hereinafter "AR") at 420-25). He alleges a disability onset date of April 1, 2008, due to atrial fibrillation. *Id*. at 114, 500, 505.  Plaintiff was born on April 30, 1960, and was nearly 48 years old on the date of his alleged disability onset. *Id*. at 420. He has completed an associate degree and has previous work experience as a DES operator, a quality inspector/supervisor, and a safety coordinator. *Id*. at 112, 516-17.

After his initial application was denied, Plaintiff requested a hearing, which was held on May 18, 2010, before an Administrative Law Judge ("ALJ"). *See Id*. at 109-37, 139-40. Following this hearing, the ALJ determined that Plaintiff was not disabled. *Id*. 141-61. In February 2012, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, vacated the decision, and remanded the case to the ALJ for further evaluation of the treating source opinions in the record. *Id*. at 188-92.  Thereafter, the ALJ conducted two more hearings. *See Id*. at 51-83, 84-108.

On December 20, 2012, the ALJ issued his decision denying benefits. *Id*. at 20-50. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since April 1, 2008. *Id*. at 25. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) cardiac disorder (atrial fibrillation and cardia arrhythmia); (2) narcissistic

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

personality disorder; and (3) anxiety disorder. *Id*. At step three, the ALJ found that Plaintiff did

not have an impairment that met or medically equaled a listed impairment. *Id*. at 26-27.

The ALJ then assessed the following residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b), except as
> follows. The claimant is able to frequently stoop, crouch, kneel,
> crawl, and climb ramps and stairs. The claimant is occasionally
> able to climb ladders, scaffolds, and ropes. The claimant is able to
> have occasional, non-intense, interactions with coworkers and
> supervisors. The claimant should not interact with the public.

*Id*. at 27.

At step four, the ALJ concluded that Plaintiff was able to perform three positions from

his past relevant work. *Id*. at 41. Consequently, he found that Plaintiff had not been under a

disability as defined in the Social Security Act. *Id*. at 42. Accordingly, Plaintiff's application for

disability benefits was denied.

Following the ALJ's decision, Plaintiff again requested review by the Appeals Council.

*Id*. at 7-19. The Appeals Council denied his request on August 29, 2014.  *Id*. at 1-6.  The

decision of the ALJ then became the final decision of the Commissioner.  20 C.F.R. § 404.981;

*Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted).  Plaintiff filed this

action on October 3, 2014. (Doc. 1). The court has jurisdiction to review the final decision of the

Commissioner.  42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining

whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation

omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003).  The court may not reverse

an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff raises numerous arguments on appeal. One of those arguments — the ALJ erred in his evaluation of a treating source — is sufficient on its own to warrant reversal. Therefore, the court declines to address the others as they may be impacted on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").

Dr. Kevin Dryden began treating Plaintiff in September 2008 for his atrial fibrillation. *See* AR at 735-37. At that time, Dr. Dryden believed that Plaintiff's complaints were directly

related to his panic attacks and anxiety. Dr. Dryden continued to treat Plaintiff throughout the year, and these subsequent treatment notes confirmed his belief that that Plaintiff's anxiety was poorly controlled and was directly linked to his cardiac complaints. *Id*. at 722-23, 726-28. The treatment notes from January and February 2009 contain similar findings.

In September 2009, Plaintiff asked Dr. Dryden to declare him disabled. *Id*. at 818. Dr. Dryden explained that he could only state Plaintiff's medical and psychological issues and how they affect his functionality. *Id*.  At that time, and based on his review of Plaintiff's full cardiac workup, Dr. Dryden believed that Plaintiff's cardiac issues were not disabling and could be controlled with medication. *Id*. He further stated his opinion that if Plaintiff controlled his anxiety, his physical issues would improve. *Id*. Dr. Dryden's treatment notes for the remainder of the year show continued issues with episodes of atrial fibrillation.

In January 2010, at the request of Plaintiff's attorney, Dr. Dryden completed a "Medical Source Statement of Ability to do Work-Related Activities." *Id*. at 783-88. In this evaluation, Dr. Dryden limited Plaintiff to standing or walking one hour at a time for a total of two hours in an eight-hour day. *Id*. at 784. He also limited Plaintiff to sitting for two hours at a time. *Id*. He stated that Plaintiff must avoid unprotected heights, never climb ladders, ropes or scaffolds, and only occasionally engage in postural activities. *Id*. at 786.

In 2011, Dr. Dryden opined that Plaintiff's capabilities were markedly limited. He stated that Plaintiff would lose consciousness multiple times per week, which resulted from Plaintiff's atrial fibrillation. *Id*. at 1274. In addition, Dr. Dryden completed a "Cardiac Residual Functional Capacity Questionnaire," wherein he limited Plaintiff to sitting and standing/walking for less than two hours in an eight-hour day. Dr. Dryden stated that Plaintiff would need to take

unscheduled breaks for at least 30-90 minutes after each hour of work. *Id.* at 1277. Dr. Dryden believed that Plaintiff should avoid all but low stress situations. *Id.* at 1276.

The ALJ concluded that Dr. Dryden's opinions were not entitled to controlling weight, and further concluded that his opinions were entitled to less weight than those of the consulting physicians. Because the court concludes that these determinations are not adequately substantiated, remand is required. *Id.* at 36-37.

The opinions of a treating source are entitled to controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Further, they cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2). Good cause may be found when an opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Under the regulation, even when a treating source is not given controlling weight, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotation marks omitted).

In refusing to accord Dr. Dryden's opinion controlling weight, the ALJ stated that "the treating source opinions are not consistent with the other substantial evidence in the record." AR at 37. This is problematic for two reasons. First, the ALJ did not specifically discuss Dr. Dryden's opinions. Rather, he discussed all of the treating source opinions *en masse*, without providing any particular analysis of the individual opinions. This alone is error, as it prohibits any meaningful review of the ALJ's decision. It is not clear what sources — let alone the specific aspects of the opinions — the ALJ found to be inconsistent with the other evidence. *See Sissom v. Colvin,* 512 F. App'x 762, 766–67 (10th Cir. 2013) (where the ALJ did not give the doctor's opinion "controlling weight" but did not articulate what weight, if any, he gave to the opinion, simply assigning greater weight to the opinions of the non-examining agency physicians, the court found error because the ALJ's decision was not sufficiently specific to make clear the weight the ALJ gave to the treating physician's opinion and the reasons for that weight).

Second, the "other substantial evidence," upon which the ALJ relied, consisted solely of the opinions from the State Agency review physicians, a Consultative Examiner[2], and a medical expert who reviewed Plaintiff's medical records. This, however, "turns the treating source rule on its head." *Romo v. Colvin*, 83 F.Supp. 3d 1116, 1121 (D. Colo. 2015). A conflict between a treating source opinion and another medical source's opinion "provides no basis *per se* for crediting the one over the other." *Id*. "Such an observation is little more than a conclusion in the guise of a finding, which does not constitute substantial evidence in support of the disability determination." *Id*.

---

[2] This Consultative Examiner was a psychologist, who examined Plaintiff on one occasion, and — as he was not a medical doctor — was presumably not qualified to opine on Plaintiff's physical condition or limitations. Thus, to the extent that he did so, the ALJ's reliance on this source to contradict Dr. Dryden, an M.D., was misplaced.

In addition, the ALJ did not properly weigh Dr. Dryden's opinions. In concluding that Dr. Dryden's opinions were entitled to little weight, the ALJ relied primarily on the fact that Dr. Dryden "accepted at face value the statements made and symptoms reported by the [Plaintiff]." AR at 37. Because the ALJ found Plaintiff's credibility to be suspect, he, consequently, discounted the treating source opinions. This was error.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgements, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal quotation and citation omitted) (emphasis in original); *see also Garcia v. Barnhart*, 188 F. App'x 760 (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from the correct legal standard and his decision is not supported by the substantial evidence."). "The ALJ must have a legal or an evidentiary basis for his finding that a treating physician's opinions were based merely on Plaintiff's subjective complaints." *Lopez v. Astrue*, 805 F.Supp. 2d 1081, 1089 (D. Colo. 2011).

Here, the ALJ relied on the fact that Dr. Dryden did not conduct any validity testing to confirm Plaintiff's condition. While this might be true, the absence of testing does constitute "contradictory medical evidence." *McGoffin*, 288 F.3d at 1252. Furthermore, other than his conclusory statement and a general observation regarding the availability of such tests, the ALJ failed to demonstrate that such testing was required or that Dr. Dryden would have been likely to change his opinion had he conducted such tests. Thus, the ALJ erred in rejecting Dr. Dryden's opinions on this basis.

8

In addition, the ALJ cites a single treatment note from 2009 — near the beginning of the treating relationship — wherein Dr. Dryden stated that Plaintiff's cardiac issues are not disabling. AR at 38-39. Based solely upon this treatment note, the ALJ concluded that Dr. Dryden's opinions were "inconsistent" with the treatment records. *Id*. at 40. This, however, is a cramped and miserly reading of the evidence. It fails to adequately account for Dr. Dryden's longitudinal perspective on Plaintiff's treatment history.  Indeed, the reason treating sources are generally entitled to greater weight is because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

At the time the ALJ issued his opinion, the record shows that Dr. Dryden treated Plaintiff regularly — every one to three months — for a period of more than three years. Dr. Dryden conducted independent medical evaluations of Plaintiff, including multiple EKG's, and even witnessed an episode of atrial fibrillation that resulted in Plaintiff's transportation to the emergency department. Further, Dr. Dryden consulted and reviewed the opinions and testing from other health care providers in their attempts to alleviate Plaintiff's symptoms, with no apparent success. The ALJ should have considered the entire course of Plaintiff's treatment to determine whether Dr. Dryden's opinions were adequately supported by the medical record. *See Orender v. Barnhart,* 2002 WL 1747501, at *6 (D. Kan. July 16, 2002) (citing *Nieto v. Heckler,* 750 F.2d 59, 61–62 (10th Cir.1984)) ("A medical opinion based on a physician's evaluation of the patient's medical history, observations of the patient, and an evaluation of the credibility of the patient's subjective complaints of pain, is medical evidence supporting a claim

of disabling pain, even if objective test results do not fully substantiate the claim."). The ALJ's

citation to a single treatment note from the beginning of the doctor-patient relationship does not

constitute substantial evidence upon which Dr. Dryden's treating source opinion could be

discredited.[3]

The ALJ also rejected Dr. Dryden's opinions on the basis that the "record suggest[ed]

that Dr. Dryden [was] not impartial." AR at 40. The ALJ based this conclusion on a solitary

treatment note wherein Dr. Dryden stated that his office would contact Plaintiff's attorney "to

clarify what is needed to get qualified for disability." *Id*. On its face, this comment demonstrates

little in the way of biased motivations the part of Dr. Dryden. Rather, it simply states that

clarification would be sought regarding the disability process. However, even if it could be

construed as taking a position of advocacy, the Tenth Circuit has consistently held that "an ALJ's

assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject

his opinion." *McGoffin*, 288 F.3d at 1253. The ALJ did not cite any other evidence to suggest

"some exceptional basis in the facts of this case." *Frey*, 816 F.3d at 515. Thus, the ALJ's

assertion regarding Dr. Dryden's partiality is little more than a conclusory statement and does

not constitute a good reason to discount this treating physician's opinions. *Id*.

For these reasons, the court concludes that remand is warranted.[4]

---

[3] Although the opinions of consultative examiners may provide some support in this regard, the ALJ did not specifically compare these assessments with Dr. Dryden's, or even note the ways in which the opinions were consistent or contradicted with one another. Rather, as previously noted the ALJ referred to the treating source opinions as a group and did not undertake a specific discussion. Such a comparison, with *appropriate deference given to the treating physician statements*, would be appropriate on remand. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir.2004); *Davis v. Astrue,* 2010 WL 3835828, at *6 (D. Colo. Sept. 23, 2010).

[4] By this decision, the court is neither finding nor implying that Plaintiff is or should be found to be disabled.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REMANDED for further proceedings consistent with this opinion. The Plaintiff is awarded his costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1).

DATED at Denver, Colorado, this 7th day of September, 2016.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge
District of Colorado